Opinion issued October 11, 2007











In The

Court of Appeals

For The

First District of Texas






NO. 01-06-01074-CV






ALLEN R HARTMAN & LISA HARTMAN, Appellants


V.


HARRIS COUNTY APPRAISAL DISTRICT AND THE APPRAISAL
REVIEW BOARD OF THE HARRIS COUNTY APPRAISAL DISTRCT,
Appellees






On Appeal from the 80th District Court

Harris County, Texas

Trial Court Cause No. 2005-49164






O P I N I O N

 Appellants, Allen R Hartman and Lisa Hartman, sued appellees, Harris County
Appraisal District (HCAD) and the Appraisal Review Board of the Harris County
Appraisal District (HCARB), alleging that their real property was appraised
excessively and unequally for tax year 2005. Appellees moved for summary
judgment, asserting that the appraised value was the result of an agreement between
the parties and, therefore, under section 1.111(e) of the Tax Code, could not be
contested in a judicial appeal. The trial court granted appellees' motion and rendered
judgment in their favor. In a single point of error, the Hartmans contend that the trial
court erred in rendering summary judgment for three reasons: (1) there was no
agreement reached between the parties; (2) the valuation was determined by HCARB,
giving the Hartmans a statutory right to appeal under section 42.01of the Tax Code;
and (3) the Hartmans' due-process rights were violated by the application of section
1.111(e) of the Tax Code by denying their right to a judicial appeal. We affirm.

BACKGROUND


 HCAD appraised the Hartmans' real property at a value of $1,476,828 for tax
year 2005. As provided by statute, the Hartmans filed a notice of protest of that value
with the HCARB. See Tex. Tax Code Ann. § 41.41 (Vernon 2001). The Hartmans
designated Clyde Cooper, an employee of O'Connor & Associates, as their agent to
represent them at the HCARB hearing. Shelly Summers represented the chief
appraiser of HCAD. The transcript of the hearing reveals the following proceedings:

 Female Speaker: The recorder's on. The hearing is being recorded so
the information you present before the board Mr.
Cooper with regards to the property owner you're
representing should be the truth. At this time, you
need to sign the affidavit and put in an opinion of
value for us please. 


 Mr. Cooper: Okay. Hold on.


 Female Speaker: And the opinion of the value is?


 Mr. Cooper: $1,340,000 even.


 Female Speaker: Okay. Signature. And Ms. Summers should be
_____ under oath.


 Ms. Summers: Shelly Summers and I'm also under oath.


 Mr. Cooper: Clyde Cooper. I'm under oath as well.


 Female Speaker: ___ ___ ___ ___ place themselves under oath at this
time and once this is completed we will go to the
district for a description of the property.


 Ms. Summers: Service address is 918 Huntington [Cove], Lot 4 in
Huntington Cove. It's a 1994-year built with 6,746
square feet. It's on a slab foundation. ___ has
central and heat. It's a brick exterior wall with five
bedrooms, five full baths and 2 half baths. It has a
two-stop elevator and a conventional wood-burning
fireplace. It does have a canopy and a pool. The
last sale ___ the property was in June of 2004 for
$1,340,000. Total land area is 46,961 square feet
and the ___ market value for 2005 is $1,476,828.


 Female Speaker: Is that correct Mr. Cooper?


 Mr. Cooper: It is.


 Female Speaker: Okay. We will hear from you.


 Mr. Cooper: Thank you very much and in Ms. Summers prelude
to this hearing, she asked . . . did we mention how
we derive at our values of recent purchase as
identified on transaction report. I have it circled for
you as well, at $1,340,000 is the purchase price of
June 2004. It is also identified on the property
record description card.


 Ms. Summers: The best indication of market value would be recent
purchase of the property. The property was
purchased in June of 2004 for $1,340,000 therefore,
that is the district recommendation.


 Female Speaker: Mr. Cooper?


 Mr. Cooper: Nothing additional.


 Female Speaker: Okay, the hearings closed. The property and the
count concurs with the district.


 Male Speaker #2: Concur.


 Female Speaker: Account ending 0004 for tax year 2005, the market
value will be $1,340,000 even. This ends the
hearing.


 HCARB subsequently issued an Order Determining Protest listing the final
value at $1,340,000 and including the following statement: 

 YOU HAVE THE RIGHT TO APPEAL THIS ORDER TO THE
DISTRICT COURT. IF YOU WANT TO APPEAL, YOU SHOULD
CONSULT AN ATTORNEY IMMEDIATELY. YOU MUST FILE A
PETITION WITH THE DISTRICT COURT WITHIN 45 DAYS OF
THE DATE YOU RECEIVE THIS NOTICE. 


 See Tex. Tax Code Ann. § 41.47(e) (Vernon 2001). The Hartmans then filed suit
under chapter 42 of the Tax Code, contending that their property value was assessed
excessively and unequally. See Tex. Tax Code Ann. § 42.01 (Vernon 2001). 
HCAD filed a motion for summary judgment on the ground that a final and binding
agreement between the parties, pursuant to section 1.111(e) of the Tax Code, had
been reached at the HCARB hearing, thereby barring the Hartmans from taking a
judicial appeal. See Tex. Tax Code Ann. § 1.111(e) (Vernon 2001). The Hartmans
responded to the motion by denying that an agreement had been made. The trial court
granted HCAD's motion, and the Hartmans perfected this appeal. 

DISCUSSION


Standard of Review

 Summary judgment under Rule 166a(c) is proper only when the movant
establishes that there is no genuine issue of material fact and that the movant is
entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Randall's Food
Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995); Lawson v. B Four Corp.,
888 S.W.2d 31, 34 (Tex. App.--Houston [1st Dist.] 1994, writ denied). In reviewing
a summary judgment, we must indulge every reasonable inference in favor of the
nonmovant and resolve any doubts in its favor. Johnson, 891 S.W.2d at 644; Lawson,
888 S.W.2d at 33. We will take all evidence favorable to the nonmovant as true. Id. 
As movant, the defendant is entitled to summary judgment if the evidence disproves
as a matter of law at least one element of each of the plaintiff's causes of action. Lear
Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991); Marchal v. Webb, 859
S.W.2d 408, 412 (Tex. App.--Houston [1st Dist.] 1993, writ denied).

Agreement between the parties

 The Hartmans contend that there was no agreement as to valuation as required
by section 1.111(e) of the Tax Code. 

 When construing a statute, we look to the language of the statute as the truest
manifestation of legislative intent. Alex Sheshunoff Management Servs., L.P. v.
Johnson, 209 S.W.3d 644, 651 (Tex. 2006). Thus, when the language is
unambiguous, we construe the statute as written. Id. at 651-52. We read words and
phrases in context and construe them according to the rules of grammar and common
usage. Tex. Gov't Code Ann. § 311.011 (Vernon 2005). Although permitted by the
Code Construction Act, secondary materials should not be overly relied upon,
especially when the statute's language is clear. Alex Sheshunoff Management Servs.,
209 S.W.3d at 652 n.4 (citing Tex. Gov't Code § 311.023).

 Section 1.111(e) of the Tax Code provides, 


 An agreement between a property owner or the owner's agent and the
chief appraiser is final if the agreement relates to a matter: 

 (1) which may be protested to the appraisal review board or on
which a protest has been filed but not determined by the board[.] 


Tex. Tax Code Ann. § 1.111(e)(1). The Hartmans contend that, because they had
already filed their notice of protest and a hearing had been scheduled, the only
applicable part of section 1.111 is the clause, "on which a protest has been filed but
not determined by the board." They argue that it was, in fact, the board that
determined their appraised value. On the other hand, HCAD argues that the clause,
"which may be protested to the appraisal review board" is the applicable clause in this
case because the agreement "relates" to such a matter. 

 The two clauses in section 1.111(e)(1) do not relate to two separate types of
matters to be considered through a protest. A matter on which a protest has been filed
is, necessarily, a matter which may be protested to the board. When read together, the
two clauses in section 1.111(e)(1) provide a continuum beginning before any protest
is filed and continuing through the filing process up to the point that a determination
is made by the board. We conclude that an agreement between a property owner or
his agent and the chief appraiser made at any point on this continuum is final, as
provided in section 1.111(e). We need not determine which of the two clauses is
applicable to a particular agreement. The issue is whether the agreement relates to
a matter that may be or has been protested, but not yet determined by the board. 

 The Hartmans argue that no agreement was announced and there was never an
agreement between their agent and the appraiser, but that the two "merely
recommended the same value." The Hartmans direct us to definitions of "agreement"
from Merriam-Webster OnLine, (1) which include "the act or fact of agreeing" and
"harmony of opinion" and the definition in Hayes v. Nichols, 203 S.W.2d 274 (Tex.
Civ. App.--Eastland 1947, no writ), which provides, "An agreement is a verbal
understanding to which both parties have assented and upon which both are acting." (2) 
The Hartmans assert that, here, "neither party acted upon the matter," nor did they
inform the panel of the agreement. 

 The Tax Code does not provide for any particular method of informing
HCARB of an agreement between an owner or agent and the chief appraiser. When
the Hartmans' agent and the appraiser each announced the same opinion as to the
value of the property, they were in "the act or fact of agreeing" and were expressing
a "harmony of opinion." And in announcing their opinions regarding the value, they
were "acting" upon the matter and informing the panel of their agreement. Section
1.111 does not require a formal announcement such as "we agree." 

Determination of the property value by HCARB

 The Hartmans contend that the valuation was actually determined not by
agreement between the parties, but by HCARB, as evidenced by the Order
Determining Protest issued by HCARB four days after the initial hearing. The order
stated that "the board . . . determined that the appraisal records should be changed as
follows: Final Value: 1,340,000" and included the notice required by section 41.47(e)
of the Tax Code, "You have the right to appeal this order to the district court." See
Tex. Tax Code Ann. § 41.47(e). 

 The facts of this case are similar to those in Sondock v. Harris County
Appraisal District, No. 14-06-00676-CV, 2007 WL 1557424 (Tex. App.--Houston
[14th Dist.] May 31, 2007, no pet. h.), and BPAC Tex., LP v. Harris County Appraisal
District, No. 01-03-01238-CV, 2004 WL 2422033 (Tex. App.--Houston [1st Dist.]
Oct. 28, 2004, no pet.) (mem. op.). In Sondock, at the hearing before the three-member panel, the owner's agent stated a value of $880,500. Sondock, 2007 WL
1557424, at *1. The HCAD representative said, "The District concurs. The District
would recommend $880,000 even." Id. A panel member announced, "[T]he value
is and shall be $880,000." Id. Following the hearing, the Board issued an Order
Determining Protest setting the value at $880,000 and stating that the homeowner had
the right to appeal. Id. In response to Sondock's claim that there was no agreement,
the court of appeals referred to The American Heritage Dictionary's definition of
agreement, "The act of agreeing; harmony of opinion; accord," and concluded that
there was harmony of opinion between the Sondocks and HCAD regarding the value
of the property and that section 1.111(e) does not require the parties to "announce"
their agreement. Id. at *2. The court further concluded that, because the agreement
related to the appraised value of the property, the agreement was final, and any
subsequent determination by the Board, such as the Order Determining Protest, was
irrelevant. Id. 

 In BPAC, the property owner's agent submitted a written statement that, in his
opinion, the property value was $12,075,920. BPAC, 2004 WL 2422033, at *1. The
HCAD representative, after giving the property description, said, "[W]e'll agree with
that number." Id. When asked if that value was agreeable to him, the owner's agent
said, "Yes, it is." Id. The panel then deliberated and set the value at $12,075,920. 
Id. HCARB ordered that HCAD correct its appraisal roll and sent a copy of the order
to BPAC with a notice stating that BPAC had a right to appeal the decision to the
district court. Id. BPAC filed suit in district court, which rendered summary
judgment for HCAD. Id. at *2. On appeal, BPAC claimed that there was no
agreement between it and HCAD. Id. We said that the "testimony at the protest
hearing plainly establishe[d] the existence of an agreement" and that, because the
property value had not been determined by the board, the agreement was final,
regardless of any later action taken by HCARB. Id. at *3. 

 The Hartmans distinguish the facts in BPAC from the facts in this case because,
in BPAC, the chief appraiser's representative said, "We'll agree [to the agent's
value]," and the agent, when asked if the value was agreeable to him, said, "Yes, it
is." We do not consider that these statements distinguish BPAC, nor does the HCAD
representative's statement in Sondock, "The District concurs," distinguish that case. 
No magic words are required by the statute. It is the fact of agreeing--the harmony
of opinions--that creates the agreement. That agreement is present in this case as it
was in Sondock and BPAC. 

Due-process violation

 The Hartmans contend that the trial court's rendition of summary judgment
based on a finding of an agreement and precluding a judicial appeal constitutes a
denial of due process.

 It is well-established that the collection of taxes constitutes deprivation of
property; therefore, a taxing authority must afford a property owner due process of
law. McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, 496 U.S. 18, 36-37,
110 S. Ct. 2238, 2250-51 (1990); ABT Galveston Ltd. P'ship v. Galveston Cent.
Appraisal Dist., 137 S.W.3d 146, 155 (Tex. App.--Houston [1st Dist.] 2004, no pet.);
see also U.S. Const. amend. XIV; Tex. Const. art. I, § 19. However, "[d]ue process
simply affords a right to be heard before final assessment; it does not detail the review
mechanism." Dallas County Appraisal Dist. v. Lal, 701 S.W.2d 44, 47 (Tex.
App.--Dallas 1985, writ ref'd n.r.e.). In cases involving property taxation, due
process is satisfied if the taxpayer is given an opportunity to be heard before an
assessment board at some stage of the proceedings. ABT, 137 S.W.3d at 155; Denton
Cent. Appraisal Dist. v. CIT Leasing Corp., 115 S.W.3d 261, 266 (Tex. App.--Fort
Worth 2003, pet. denied); Lal, 701 S.W.2d at 47. 

 The Hartmans' agent was at the protest hearing before a panel of the board
when he gave his opinion of the Hartmans' property, to which the HCAD
representative agreed by stating the same value. Thus, the Hartmans had an
opportunity to be heard before the board. Their contention that they were denied due
process has no merit. 

 CONCLUSION


 We hold that the trial court did not err in granting summary judgment in favor
of HCAD. Accordingly, we overrule the Hartmans' sole issue.

 We affirm the judgment. 



 Sam Nuchia

 Justice


Panel consists of Justices Nuchia, Hanks, and Bland. 

1. Internet Website: www.m-w.com/cgi-bin/dictionary?book=Dictionary&va=agreement (last
visited September 28, 2007). 
2. We note that the Hayes court did not define "agreement." The definition was in the trial
court's charge, and no one objected to the definition. Hayes v. Nichols, 203 S.W.2d 274, 274 (Tex.
Civ. App.--Eastland 1947, no writ).